Good afternoon Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Michael B. Hyman presiding, case number 22-1600, I'm sorry, case number 23-0360, John Thulis v. City of Chicago. Thank you. Good afternoon. I'm Justice Michael Hyman and with me are my colleagues, Justice Carl Walker and Justice Sanjay Taylor. I'd ask that the appellant, the appellee, please introduce yourselves and for the appellant how much time you wish for rebuttal. Thank you. Good afternoon. I don't see Judge Horan. No talking please. Sorry, I'm not sure what happened. Good morning or good afternoon. My name is Ken Goldstein. I'm here on behalf of the appellants, John Thulis and Jason Webb and I would like to reserve five and I'm here on behalf of the City of Chicago. Thank you very much. Mr. Goldstein, you may proceed. Thank you. In the QUETAM case and False Claims Act cases, Scocchetti, QVC, Burlington Coat, as cited by the Thornley case recently, they all hold that the state is the real party in interest and here the state's voluntary dismissal pursuant to the False Claims Act, Statute 175-4C-2A was their dismissal and the implication of that is that at least all three elements, but here from that dismissal, two elements of res judicata are not met and res judicata should not be applied. The first is the final judgment on the merits. The court decided this case on a different ground, correct? Yes. Go ahead. Sorry, I'm going to interrupt. The lower court, the defendants moved on res judicata and collateral estoppel and the lower court ruled on collateral estoppel and in the response brief, and we briefed both in our opening brief, and the city in their response essentially waived collateral estoppel and this is the no vote review so for any reason in the record, of course, they argued res judicata. I'm prepared to argue both if the court would like. If they waived it, there's no reason for that and their brief does not discuss collateral estoppel. With regard to the other matters that they raised for dismissal, non-jurisdictional? Right. The judge did not consider those at all, correct? Not at all, not at all, and I'm prepared to discuss them because they are de novo review. It's a private right of action under the, under the, we know what they are, but so my question is the relief that you're asking, you ask that we send it back for further proceedings, but what proceedings should we send it back for because we are a court of review and the court has not reviewed the other, if, depending on how we rule, I mean, I want to put that clear. I'm not clear where we're going to go, but should we rule in your favor? What I'm trying to find out is what happens when we send the case back? Shouldn't this case be sent back for the court to determine whether there should be dismissal on some other grounds that were raised? Sure. We would like the whole enchilada here. We would like the court to, since we are here, this has taken so long. On a de novo review of collateral estoppel, I think that the court should review the issue of res judicata and remand, and although we would like the court to then say, yes, there's a private right of action or these other causes of action could go forward. Theoretically, of course, the circuit court should get a first attack at it so that the court of review has a basis to review it. It's fully briefed in the record, but so our request would be for a remand that the case is not barred by res judicata or collateral estoppel, and that then we would proceed on the merits of motion practice of the uncashed checks under whatever causes of actions they'll move to dismiss. Mr. Goldstein, don't you that if we do rule in your favor and find that res judicata does not apply, that we could address the other defenses raised by the city because they're legal defenses in nature and, you know, we're just as well equipped to handle those legal defenses as the trial court? Oh, yes. I think that you could, and that's why we briefed them and we addressed them and prepared to discuss them. We think that the private right of action, that there exists a ban on property act, that the interest act would apply under the fraud exception, that the consumer fraud act claim applies to suing the city, and that they're a person under the act on the deceptive trade practices act. We also had conversion and their bad faith in suppressing this and negotiating it for about 12 years, and the ministerial act of a writ of mandamus. I think we also had unjust enrichment as well, and all those sort of get do gets assumed into the private right of action claim, but they're different. They have distinct parts, and we think that we could, yes, so the short answer to your question. Why don't you go on to your res judicata arguments? Sure. Thank you. Before you even start, Mr. Goldstein, that's kind of where I was going to take you as well, but it seems to me that the city's primary argument as to why this is registered, the is because your client objected to the dismissal, and they state that a few times in their brief. Can you kind of get us past that argument? Sure. Our plaintiff's objection does relate the relators objection does not convert the state's voluntary dismissal into a non-voluntary dismissal because it's ministerial. It's non-adjudicative, and the state is given broad discretion under the statute under 740 ILCS 74. We'll just start calling it 4 C 2 way. They have wide discretion to dismiss it. That was what the dismissal was on. This is not a 210. We don't have absolute discretion. Would you concede that they don't have absolute discretion? Right. We would not. Yes, we that was the that was the basis of the Thouless decision and the in the quittem. That's what we objected to that that there needed to be a glaring that we argued that there was a glaring evidence of bad faith and the standard in Illinois. It's clear after you get past that issue because they were in the middle of negotiating with the city. There was no bad faith on the part of the state. That's what you you were just saying that we realize that that's that may be a basis but that there was no bad faith here. There was no the only the dissent found that a bad faith but the majority opinion which we respect did not and so the dismissal was on 4 C 2 a under the false claims act that the state has discretion to dismiss it for really any reason at all. And so our objection essentially is irrelevant. It doesn't convert a our the dismissal because they it was ministerial. The attorney general made a motion. It is non-adjudicative and so because of that it it it operates because Polanski says it and Thornley just says it that the that the quittem case is brought for the state. They moved that way as a voluntary dismissal. There was no there's no technically and it's it's it it's judicata because it was a 4 C 2 a dismissal. Right so Thornley said the state moved for dismissal during the seal period. Mr. Goldstein but you're you're you're starting to repeat yourself just a little bit. So why don't you just go ahead and get and this is what Justice Taylor asked before. Get into your res judicata argument. Just go just tell us tell us why why it doesn't apply. It's not a final it's one it's not a final judgment on the merits. The dismissal is voluntary by the state under 4 C 2 a. Thornley held that the courts have never applied the standard of 2109 to dismiss for motion to dismiss in a state quittem suit that's at paragraph 58 of Thornley and the 2109 discussion it's like it it it adheres to it it supports it and it doesn't can our objection doesn't convert anything that rule 273 wouldn't apply because it's dismissal to a statute. So the case was dismissed was a was was not was voluntarily dismissed. It was and thus it wasn't a final judgment on the merits and then there's also no identity of the parties. The case is brought in the name of the state and only the state and that's what Scaretti says. That's what QVC says. That's what Burlington says. That's what Polanski says. That's what Thornley says. It's um um and then finally there's also no identity of the um of the case and the our quittem case at the last paragraph I believe it's paragraph 26 says that when we try to amend and add a consumer fraud claim the the appellate court said that it was not um it's a different cause of action and this um your honor um uh Justice Walker you you and Justice Hyman was on the a decision in um IPNA just very recently saying um it was a rule 23 um order it was a uh collateral stopple decision and but what what you said even though it's an unpublished decision uh I think we've lost Mr. Goldstein so let's wait till he comes back I think he was having some problems with this connection there you're you're back it's it's it's it's right it dropped out right right at the moment uh Justice uh uh Walker and Hyman were on the panel in this division and on this case uh on this uh from this court in IPNA was a it was a collateral stopple case and and even though it's a rule 23 opinion uh it it's it's replete with throughout the the the case law that collateral stopple or res judicata prevents a party from losing an issue on the merits and then litigating it before a different judge to procure a different result and that's just not the case here at all the Mr. Goldstein let me ask you a hypothetical and I'm going to ask uh the city the same thing so the false claims act uh permits uh um someone to bring a name bring an action on behalf of the government ketam means the name in the name of the king but it also permits the government to bring an action against a defendant for violating the false claims act so my question to you is if the um if the state somewhere down the road likes to sue the city under the false claims act can it do so or would it be subject to the rest you to cut a bar well that's that's an interesting question it's really not in front of us and we don't have that I know I know that's what I understand um could you know um Polanski says that um your answer has to be yes right your answer has to be yes they could because there was no final judgment on the merits right they never they there was no final judgment on the merits to to the state either um it wasn't just us um they voluntarily dislisted if we had the case to sort of address it where they declined to intervene and then the plaintiff goes forward and then the state decides to move to intervene that was what was that's what happened in several cases um and Thornley that was what was the um that uh I guess you threw me the lifeline that yes that they it was not it was a voluntary dismissal as to them and uh they would have there was no hearing um there was no trial um there was no final judgment and so yes um well the question is whether I mean the question comes down to whether the voluntary dismissal somehow rubs off so to speak on the realtor I mean that's what the city argues that there is a connection and therefore uh the realtor has an interest they use that term and some case law about interest and because realtor has an interest they too uh are involved in that transaction sure the the the this court has found that the only only the state has been injured by a false claims and is it the real party and interest that is um uh in through through listed paragraph 24 I believe um says it um Burlington code factor the real party of interest is the state and the the relator is not in the driver's seat all the decision all the all the state can come back in they can dismiss it um uh and because of that it doesn't rub off there's no um close enough privity Taylor versus Sturgill but the U.S. Supreme Court which is saying I believe uh does not allow for close enough privity just because because the attorney was the same that is not enough and um if if we had gone out and found a different like there were that let's not lose sight of the merits that there were 22,000 people who had these stale checks totaling 11 million dollars there are other people who have these checks uh the dismissal of ours couldn't then foreclose um the others I mean that's the bottom line here that that's what I penis that that Pena decision just illustrates is that that what what did not happen here was there was no adjudication on the merits um there was in in both that's why I said technically under the law under 22c4a they clearly it was just the dismissal but in reality all that happened was a one-line dismissal if you look in the record I believe it's at record site 1029 Judge Schneider's dismissal of the Cui Tam case says it's from 4c2a and they have unlimited authority essentially and it's dismissed because they said so the attorney general is not making a judicial finding it's making a final decision not for whatever reason their resources are taxed they don't think it's a good claim um they don't think it's a Cui Tam case uh whatever it is so it doesn't rub off there's no there's no close enough uh privity there's no um implied privity between the parties this the claim was the states and um um and and really in uh for res judicata only one of the three elements need to be need to be uh barred or blocked and and res judicata as a theory of equity is a doctrine of equity equity also applies here there's no like in other cases where somebody there's no harassing type of litigation here we brought the cases of Cui Tam they said no um there the city was not did not even appear in the Cui Tam case the city did not file an appearance they were not even served the case was under seal isn't that important so there's no like there's not even a it hasn't that been pointed out by uh courts have said it that's a very early in the proceedings when it's still under seal when that happens i mean that that is a important consideration and that was the issue your honor as in thorny was that the plaintiff the state had intervened to dismiss and the court said no no no no they had asked for they had asked for time to investigate and they moved for the purpose of just dismissing and so um here we have not the city you know uh pooh-poohed the idea that of course we were part of it but they weren't they they were not served they didn't file an appearance um yeah but do you do you agree with uh thorny completely i mean it seems it appeared to me that you were you you would you sort of agree with everything it said well we went down the road that we thought that uh 2109 was really um more dispositive but it's really not it's really more um like uh two trees that are growing side by side they're they're parallel our case in that case are parallel um it supports the idea that that's not that it's not a dispositive or that it's not a um uh it supports the idea that um the the dismissal is voluntary but it doesn't um it the the court is saying that it's not um uh it's not pursuant to that it's pursuant to the statute and because it's pursuant to a statute for sure rule 273 wouldn't apply you can't constructively say then that this is a dismissal on the merits is both technically that's why i'm making this distinction technically it's on the on the statute but in reality when you look at the record clearly there was nothing that was um on the merits and then when you apply the equity and equity thought to it when you apply equity to it the city hasn't really expended any resources they haven't answered anything um they are involved but they in to the sense that that they're the target but they haven't um they haven't um been uh quote-unquote taxed uh litig they haven't had litigation costs or fees or parents so yeah anyone else have any questions why don't you you've reserved five minutes you'll get your five minutes you want to just finish up um i think that i really addressed all the res judicata issues you know this was not vexatious uh duplicative or cumulative as we were discussing and actually one last other point is that that um the the cases are seeking different results um the qui tam case is brought on behalf of the state in the application of the abandoned property statute and the injury is to the sovereign to the state in fact the state is is injured just by the city not complying with the law there's a loss of sovereignty for violating the law the consumer case is a different case it's brought um on behalf of the payees of stale checks to get their money to get their notice um the plaintiff the party the plaintiffs the the consumer class and the qui tam are essentially um uh they have different interests they're essentially um slightly to the side they they have the the act the abandoned property act gives them you know notice but here the city's keeping the float they get the interest of the float and rather than the state so they have there's a difference in um what the relief is and i think that's important to show that they're different cases of the identity of the case identity of the parties um they all sort of dovetail together in that way so thank you for giving me a few extra moments um technical glitches and all that aside and again i would like to also just tell you thank you very much for giving us oral argument on it i know the court does not always do oral arguments for everything and do appreciate the opportunity thank you thank you let's just drive to formally say five i'll reserve my the rest of my time that's fine thank you good afternoon your honors may it please the court plaintiffs claims here are nothing more than an end run around the state's exclusive authority to enforce before you get going can you address the issue that i think it was just as hyman originally asked mr goldberg the question about whether uh the collateral estoppel issue whether or not that's been waived uh yes your honor we did not pursue collateral estoppel on appeal here because we believe that race judicata was the better fit and we did brief that in the um in that um nevertheless plaintiffs failed to state any cause of action on their individual claims now and you realize that the trial judge found that this was a final judgment and that the trial judge's basis in fact was that collateral estoppel applied right correct your honor okay all right we'll hear from me let me just follow up on that um if we did i had the same question i asked mr goldstein if we ruled in his favor uh on race judicata rather than yours what happens next do i know you briefed the other issues that were raised by you to dismiss which are related to the complaint do we decide those or should that be decided by the trial court this court can decide those issues your honor i mean there are questions of law and um the appellate court can affirm on the circuit court's judgment on any grounds um supported by the record so in this case we don't have any these these claims they're all um legal all questions of law that don't require any further factual development in the record so this court can absolutely decide those claims if the court decides not to um you know that the that uh plaintiffs prevail on race it can determine that we would prevail on any of the other grounds as well okay thank you um i would like to begin with race judicata and discuss the three elements and all those three requirements are easily satisfied here well first i i know you say it's easily satisfied but if it was so easy i don't think we would be here true so just uh this is not an requires us to look a little deeper so i just wanted to mention that yes your honor um well let me start with the first element um and that is that there was a final judgment on the merits uh the keytown dismissal was involuntary and with prejudice as well let's let's go back okay how was it involuntary i mean you're saying it's involuntary because it was because the state did it the attorney general asked voluntarily to dismiss that makes it that's your argument correct your honor um and indeed how does that flow how does that flow why why would the realtor uh be uh affected when the statute gives the attorney general the right specifically to do what the attorney general did how could that be they can object which is what they did but you're saying that that makes that just turns the tables on the realtor i i don't follow that your honor um correct the state did voluntarily dismiss the case and if you look to seventh circuit precedent which we cite in our brief um i believe that the primary case we rely on is um c-i-m-z-n-h-c-a a bit of a mouthful um and that was of course under the federal false claims act but this court does look towards federal case law um to inform its decisions under illinois law um and in that case it explained that well indeed uh a voluntary dismissal by the state um what may exercise you know may um be without prejudice as to the state allowing the state to potentially refile a claim against the defendant it acts as an involuntary dismissal meaning it's with prejudice to the realtors because they do have an opportunity to um they you know they did not choose to dismiss this case it was over their objection and they're not bringing a quid tam action again they're bringing uh an action on their own behalf of different claims it's not a quid tam claim at all correct your honor and that would go to the question of whether there's an identity of cause of action here and um there is definitely under the illinois under illinois precedent uh the question on whether there's an identity of cause of action for race judicata purposes is whether the the current claims um arise out of the same transaction as the the claims in the prior suit and that's a very broad standard here so even if the claims seek different relief or if they're even fundamentally different in the words of the appellate court in thulis one as um plaintiffs point out you know the appellate categorize these as fundamentally different claims but that does not um undermine the point that these arise out of the very same transaction and that was the city's alleged failure to comply with the unclaimed property act and in fact i can ask you a question yes your honor on the identity of the cause of action i understand that um you know the case law talks about that test being a uh was not so much the whether there was a violation of the false claims act it was a dispute about whether the relator had the authority to continue to prosecute the action on behalf of the state that was really collateral to the issue that was raised in the complaint and so you know in one sense that might not be the same causes of action um so i wanted to hear from you on that and then the second question i have for you is the question that i asked uh mr goldstein which is that if um the state somewhere down the road likes to sue the city for violation of the false claims act uh does the res judicar res judicata bar prohibit that prosecution so uh your honor uh turning to your first question about the differences between the the quittam and the current claims so um it is true that the first suit involved just the quittam claims but um for res judicata purposes the question is not whether um just whether the claims were actually litigated but whether you know it certainly bars other claims that could have been brought but were not and so plaintiffs could have brought their individual claims in the complaint alongside their quittam claims but they failed to do so i don't know i've never heard that i've never heard about um is that permissible under the false claims act that a relator can sue on behalf of the government for violation of the false claims act and alternatively i guess you're saying that a relator not a relator a plaintiff can sue for his own injury i've never seen that well your honor we have not identified any case that explicitly resolves this issue but i would point out that one of the cases that plaintiffs actually cite in their brief that they rely on um it's it's a seventh circuit case again and it's it's called laird um and in that case the court was considering whether for res judicata purposes whether um i believe that that case had been there was a wrongful termination action brought individually on behalf of the plaintiff and then later um a quittam action um against uh against that his employer based on some conduct where the the employer had allegedly defrauded the federal government so um the court never said oh we cannot litigate these in the same action what the court did is what it looked at um essentially what we're asking this court to do here is look at whether you know say that they arise out of the same transaction and in that case i think that the court was considering whether they made a convenient trial unit and so in that case the court was looking at whether the allegations there were parallels in the allegations what the evidence would be to support the claims and so the court but but there was no ruling in that case that no these claims just can't be heard together and so but here but here we you know how would you try this case i mean you're saying in order to reach what you just said we should do we'd have to find that uh the the unitary trial that in one trial you could do all this i don't see how that is even possible and the fact that you have no case and not only does the united states government have a fair you know a quittam action but almost every state in the i think every state in the nation has had quittam for since 1800 so uh this they're extremely different uh it would it would be uh a real uh difficult case to do it simultaneously because you have so many different uh aspects because they're not representing themselves in one case and then you're saying they're arousing themselves in the at the same time how's that going to work well your honor i think what um is important is what the the evidence is going to be at trial and we don't know well we don't know because i well of course we don't know now what the evidence would be a trial but what this court has or i'm sorry what the illinois supreme court has said is that the you know the the most telling factor of whether two causes of action arise from the same transaction is you know the parallels in the allegations between the two complaints um and in this case the complaints are in all respects nearly identical so what we would have we have the same exact allegations in the quittam similar the facts are similar but the claims are completely different would you say that except in one case i mean there's one case where they're they overlap uh but otherwise they're different claims the claims themselves are different but that's not determinative for purposes of race judicata again it's really just whether they arise out of the same transaction and this in this case they plainly do and the courts have been illinois courts have been very clear that even if um you know loss even if the claims are different even if they seek different theories of relief um it doesn't that doesn't preclude the application of race judicata as long as those things seem like it's hopelessly or hopelessly conflicted i mean if the plaintiff were to say that i'm suing on behalf of the government to recover the garments you know to redress the wrong to the government and so that the garment can recover you know uh money that it's owed and then on the other hand saying well i've been injured and it's my money uh i just don't see how that is even viable under the false claims act well your honor essentially what plaintiffs are seeking under their quitam claims um and well under all their claims is essentially what plaintiffs are asking for is they want um the ability to claim their funds and so whether you're looking at whether it's through the quitam claims or their individual claims in the quit in the in the false ketamine claim it's to recover on behalf of the government so you know they would get the bounty so to speak you know the um that's provided but you know they're suing for the government's funds not for their own funds correct but in the quitam case um the issue would be whether the city is obligated to to comply with the unclaimed property act and that's essentially the um what plaintiffs are asking this court to decide as well is whether um the city is required to comply with the unclaimed property act so for those two questions it would be the exact same the exact same evidence the exact same you know determination let me ask you i know you didn't have a chance to address directly the second question but if the um state were to sue the city in its own name for violation of the false claims um somewhere down the road would they be barred by res judicata um it's possible under the seventh circuit precedent that we've identified um that court did say that um if it was voluntary um if the dismissal was voluntary and without prejudice on behalf of the state there's always the possibility of the state um bringing another action but that if it if it's involuntary on behalf of the the relators um then it's with prejudice to the relators and the relators are not able to bring another action the court didn't say that you're saying that the second part oh excuse me any answer to justice taylor's question your answer i believe to the question was yes the state could but then you went on and said referring to the seventh circuit case that the relators would be barred but i don't think that case says that well the the case said the case didn't come out and explicitly say the relators would be barred but what it said that's right that's right and that's why it operated as an involuntary um dismissal with prejudice as to the it was with prejudice as to the relators um i sorry if i maybe misspoken and over extended the holding there but um but the the the import of that holding though is that it doesn't matter for the purpose of the relators whether the state's dismissal was voluntary it's still with prejudice as to the relators and it's still involuntary as to as to them and um illinois courts their test under race judicata for whether there's a final judgment on the merits as long as it was with prejudice as to the relators no opportunity to the complaint then it operates as a final judgment on the merits even though mr goldstein said you this was all done before you appeared well your honor the purposes of am i right am i correct it's actually not clear in the record um you should know in the other case i mean it was the litigating the earlier case uh the if the the appellate court city of chicago wasn't even a party um it certainly there's nothing we're not really sure from the record i mean that certainly may be the case um but i would like to point out that for the purposes of race judicata um the primary determination of whether um it it should apply at all if you were looking at sort of the the equity um side of things is not specifically whether the defendant is prejudiced but it's also for the you know race judicata this is for judicial economy as well and the main purpose behind this is that um we have courts litigating you know in this case the circuit court had the if plaintiffs had brought these claims in their original complaint in the quittam and the circuit court had been able to consider them at that point um we wouldn't be burdening the circuit court now with considering we've already gone over there and i think we've gone over there okay okay yeah mr sir the the issue here is you're claiming that it's with prejudice but it was with prejudice as to their ability to bring a claim on behalf of the state it wasn't there was no prejudice to their ability to bring their own claim which is what's happening now so just kind of take us through that and i really want you to take some time to take us through this because you've kind of put so many of your eggs in this basket as it relates to res judicata and so you seem to have abandoned some other arguments that you may have had so just take us take us home on this res judicata issue because i struggle with the with prejudice and maybe you can start there and then go go through any other issues that you believe we need to hear about and we'll we'll kind of listen for a minute how about if we give you two minutes we're going to listen and not ask any questions sure sure um well with respect to your first question your honor about whether you know that this was with prejudice to the relators or sorry it's relators ability to bring another quittam but that's not when we're looking at res judicata it's not just whether the plaintiffs in the first case are able to bring the same claims again that they brought in that case but whether there were other claims that could have been brought in that case that they failed to bring and in that case they could have our argument is that they could have brought all of their other individual claims in their original complaint because they did arise out of the same transaction there wasn't anything you know any new factual developments that occurred um between their original complaint and their amended complainer in this case that um you know that that these were somehow new claims that they weren't aware of um and so that's the question we're looking at it's not whether there was a decision saying that plaintiffs were you know with prejudice couldn't bring these specific claims but it's that they could have brought them and they chose not to do so um and i would like to just hit on the final point of res judicata and that's whether the there's an identity of parties and so plaintiffs have argued that um it's only the state that is the real party of interest in a quittam and uh the illinois supreme court has in in spashidi which we cite in our brief has said that actually it's the the relators are also parties in interest in a key to in a quittam and actually under the false claims act the illinois false claims act um the general assembly has specifically said that relate that relators are also parties to a quittam and that they bring the action on behalf of the state and on behalf of themselves and it's based on you know in that assignment of the the state's damages or the award that that relators get is what gives them the interest in that quittam and the illinois supreme court the illinois supreme court has made this very clear i don't think that's what the illinois supreme court said i think you're you're overstating what the court has said i i where did they said they might have an interest but that's different than what you just said um let me use a hypothetical how about if we have a lawsuit by a parent for a minor child would you say the parent can't bring a claim on behalf of themselves after they litigated the claim on behalf of the child and they didn't bring a claim for themselves in the case with the child um that would be very difficult to answer not knowing what if there's some if there was some interest that the plaintiff or that the the parent maybe had in the case but under the law a parent is legally distinct from the child right the child can't bring the action here in a quittam this they're bringing it because the state didn't bring it right so i'm energizing those and the law that you can accept it or not is that the parent can bring a separate action on their own behalf for their own damages and their own claims but you're saying that some way in quittam that's not possible even though i don't know of any case that says it as succinctly as you just said uh the illinois supreme court did and if that was true we wouldn't even be here and if that also that was true and i'd like to hear you respond to this uh because you haven't responded to it at all the tornley case i mean they rely on the tornley case and that seems to um counter some of the things you just said so how would you respond to tornley well your honors uh tornley and the other cases that plaintiffs have cited i believe they mentioned polanski as well um those cases deal with the you know the standard of review that the court is looking at when they're determining whether to um you know how to address a state's dismissal of a case and i believe that um there are cases i'm just trying to so i so i i believe that the the import of those cases is that they the courts were just looking at how to um review the state's voluntary dismissal like what standard how much discretion to give the state there's never a question for race judicata purposes whether um the plaintiffs or the relay the relators would be considered um you know that whether the case would be involuntary as to the relators for purposes of race judicata or whether um it would be with prejudice to the relators and as far as the question of the parties and interest uh it was a sheedy that did say that um quitan plaintiffs have a personal stake in the outcome and are also a real party and interest together with the state um but i do want to point out that for the purposes of race judicata being the real party interest that's not really the test it's just were they a party to the action and clearly um relators who bring a case under the false claims act they're bringing it on behalf of themselves they're bringing it up as well as the state and they're clearly parties um they are given certain rights under the under the statute even if the state is ultimately able to um have broad discretion to dismiss the case um the relators are given we shouldn't we shouldn't follow polanski is that we should ignore the united states supreme court is that what you're telling us well the united states supreme court didn't rule on the issue that directly that were well i talked about voluntary dismissal and if what you're trying to do is use the voluntary dismissal uh as a bar and only way that could be is if they're the same party they're not the same party then it wouldn't affect uh the relators so unless you win this argument i mean you need all three to succeed and so that's why your argument is what it is but i don't see how that would uh fit under polanski which is the most i apologize your honor um polanski dealt with indeed polanski dealt with voluntary dismissal and how to consider um what you know the the standard of review to consider um plaintiffs i'm sorry to consider whether the government could basically have some sort of unfettered discretion to dismiss the the qui tam um there was no that that case didn't involve race judicata there was no discussion of whether you know a plaint you know a relator who comes back later as a plaintiff is able to refile bringing essentially the same claims that they brought in the qui tam so we don't disagree that the relator could bring a voluntary dismissal does not bar the individual's claim the relators claim individually for their own damages i'm sorry could you that the the sprint court said that the voluntary dismissal by the state does not bar the relators individual claim for damages no your honor we're not arguing that the case the court said that we're merely arguing that we don't we don't believe that polanski determines the issues here um we're not disagreeing with polanski as far as it goes but um we that there it doesn't address so you say it has no relevance does it have any relevance to this case uh i don't believe it does have relevance your honor i think it's its relevance would would just be um for assessing what standard to look at the state's ability to dismiss a case whether it has broad discretion um and so that was what was relevant in thulis one and that was what it was an issue in that appeal and in this appeal um we're just looking at whether race judicata whether the the decision in the qui tam was with prejudice as to um the relators and polanski doesn't squarely address that question what about thorny and thorny relied on polanski as well and um thorny doesn't expressly address that question either thorny also considered whether a plaintiff i'm sorry whether um a state as the government in the the false claims under the false claims act has the you know unfettered discretion or just basically how to um resolve the issue under a state's motion to dismiss um but it didn't address the nature of you know how that impacts a relator on um you know when they're coming back with individual claims you know how that works under race judicata and as far as the you know the issue with the real party and interest um uh you know obviously skashidi doesn't specifically address the the ability of plaintiffs to come back and bring individual claims later and we're not saying that it does but skashidi stands for the proposition that relators as well as the state are also parties in interest and the false claims act itself the general assembly was very clear that the state is also a party in the case so you know we sorry any other question no okay if you could finish up please sure um i just for all the reasons we've explained uh plaintiffs um claims are barred by race judicata and i would just like to briefly point out that even if this court were to decide um in plaintiff's favor on race judicata grounds for all the reasons we explain in our briefs um they simply fail to state any viable cause of action under any of the other claims that they bring um and this court should affirm the judgment of the circuit court thank you very much mr golson you have five minutes thank you uh the the laird versus lockheed case was actually a fifth circuit case um not the seventh circuit and it held that the plaintiff's quitamp claims were not barred by claim preclusion despite the extinguishing of their wrongful termination claims and they so they they were they were different um unit of issues and so it uh it denied the issue on um on um the identity of claims uh which we've addressed because of the of the thorn uh our the quitam case in thulis addresses the the claims issue um and in in fact and also the southern district of illinois decision on um um uh that that they were raised um um with chisholmera gets addressed in our case as well was extensively because it was really about what was the what was the discretion um should they look at like what was the discretion to the court and how much hearing should occur um uh like glaring evidence of bad faith versus like um other statues i don't think it really applies here um here um also answering uh justice taylor's question about the state coming back it this this issue is ongoing so they would also have another basis um because the the this doesn't seem to be a one-off issue um it's an ongoing uh potentially it's an ongoing issue um that's a nice story finally mr ghosty i don't i didn't understand what you were saying there what does that mean well i'm well the that they're not giving notice um is ongoing that they're not turning it over is ongoing so there's a new cruise a new cause of action over time it's not just um uh from two like from you know we found 20 years of not turning over the checks and then 2008 are you saying are you saying that with respect to prior instances of the city not turning over checks that any claim that uh state might bring against the city for those priorities because would be barred by residue decliner no okay no i'm not saying that but i'm just saying that that that's an i'm that they would have an additional other claims that it was ongoing uh as well so um that came to mind that the issue here is that the the defendants or the city has a lot of arguments they don't have a best argument um their argument that this is an end run around a decision um it just does not doesn't comport with the the record that the that that the state moving voluntarily under a statute to dismiss where they have broad discretion to uh dismiss that doesn't for should not foreclose a plaintiff a relator to then bring other claims even though that they're they're parallel to each other they they should not be foreclosed um that way the our best argument um although we say that all the elements are not met equity claims identity of parties the the key one of all of them our best is that there's no final judgment on the merits um qvc um scurredi scuscetti and burlington coat and then thornley and even polanski they all say that this case the qui tam is brought in the name of the state um the uh schizoid particularly says um only the state has been injured by a false claims and is the real party and interest in schizoid also so i'm sorry that was the thulis case i think it was maybe citing uh burlington coat but uh schizoid says that the always the relator is um ordinate to the state's interest and and when the state moved pursuant to a statute then um it's a volunteer it's the state's voluntary dismissal and it doesn't operate as um on the merits it's voluntary and thus mr go sing that's tissue's primary argument though that it was dismissed with prejudice as to your client and she also raised the additional argument that your client could have brought their claim in that suit and they didn't so as it was dismissed it was dismissed as to the claim they brought uh with prejudice as to them and it was also dismissed as to any other claim that they could have brought right and that is that is under rule 273 and under rule 273 it says that if it's pursuant to a statute it's not involuntary it's not a um um it's not uh i uh it's not with prejudice it's a that it's a a voluntary dismissal state are we have a difference so your client just i don't want to cut you off but but i just want to be clear that i want you to stay with her argument that it's not it's not with the problem is that it was involuntary as to your client because they objected and i think that this tissue would have taken a different position had they not objected that and that wouldn't go to the very first question that we were asked today which was does um our objection convert the state's voluntary and ours is um we're in the back seat on on that um we uh our our objection was to not does not convert the the the dismissal on the state because the state can move and lack of resources not interested um as long as it's not glaring bad faith so it doesn't convert it and because it was to the statute it doesn't um uh it doesn't constructively create an adjudication on the marriage when technically it wasn't and then when you look at the record and equity and all that it then also sir it doesn't um convert it and um uh yeah but but what they don't even say you're repeating yourself that's the only reason why i jumped in she but what she's arguing again though is that your client could have brought their cause in that case and had they done that that part of the case would not have been dismissed sure that you know the the retaliation claim sometimes get brought with a whistleblower client like a whistleblower claim will sometimes get brought with a qui tam case because they they can form a significantly in together interest but that's not the situation here um we have distinct relief requested and um even in the appellate court and thulis in the qui tam case um questions whether it was a qui tam case and and that uh that the amendment to amend the complaint was denied was in part because they they um they don't they didn't mesh up like that like you're suggesting so i think that that that's not um uh that shouldn't be a bar to us and just to be clear mr goldstein i'm not suggesting anything i'm just simply telling you what her arguments have been right i have not suggested anything and i don't have a position on the case i'm just trying to put your arguments and i wanted you to respond to her argument because you've not done so do you think that i have now have i not answered your questions i sort of you you you've sort of answered it okay the the you know the end the end one though here is that this is not an end run around anything um uh because the the the court has never nobody has addressed the merits of this claim and the idea that one should preclude the other um it doesn't have any support and for those reasons we would ask that um uh the court remand um the case for further proceedings that uh denying that read that the car the claim is barred by res judicata thank you thank you to both of you any other questions thank you thank you thank you to both of you you're we're well prepared today we appreciate that your briefs were well done well argued and we also appreciate that we'll take the case under advisement and decide in due course so thank you very much and have a good and hopefully a cool afternoon thank you you too thank you